**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DTN, LLC F/K/A TELVENT DTN, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>PIONEER HI-BRED INTERNATIONAL, INC.,<br><br>    Defendant. | CIVIL ACTION<br><br>No. 1:18-cv-00384-LPS |

**VERIFIED COMPLAINT**

Plaintiff DTN, LLC F/K/A/ Telvent DTN, LLC ("DTN"), by its undersigned counsel, files this Verified Complaint against Defendant Pioneer Hi-Bred International, Inc. ("Pioneer") and in support thereof avers as follows:

**PRELIMINARY STATEMENT**

1. DTN and Pioneer are competitors who entered into a Collaboration and License Agreement ("Agreement") four years ago to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ As part of that collaborative effort, DTN allowed Pioneer access to its customers, and installed over 4,000 weather stations for the joint customer base. The DTN weather stations are complex technological hardware, installed at each customer's farm, which allow DTN to provide hyper-localized weather services and seed planting and harvesting advice for each customer based on their precise location. DTN provides this information through its "MyDTN" platform, a customizable website that provides, among other things, the industry's top-rated temperature and precipitation forecasts, spots trends and opportunities, and reduces weather-related risks and poorly-timed operations.

2. Although DTN performed in good faith at all times and tried to grow the parties' joint customer base, Pioneer did not. Pioneer has been using the Agreement to steal DTN's customers. Once Pioneer gained access to DTN's customers, ███████████ ███████████████████████████████████████████ Among other things, ████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ all in flagrant violation of the Agreement.

3. As a result of Pioneer's bad faith actions and breaches of the Agreement, DTN terminated the Agreement in late October 2017. Pioneer responded a week later by disputing DTN's termination but purporting to terminate the Agreement for other reasons. Both parties agree that the Agreement is now terminated.

4. Under the Agreement, ████████████████████████████ ███████████████████████████ Incredibly, Pioneer is doing the very opposite. Pioneer has been instructing the joint customer base—including thousands of DTN Weather Station customers—to cancel their DTN agreements and dismantle and return the DTN Weather Stations. DTN knows this for a fact because it now possesses a smoking gun email that Pioneer accidentally sent to DTN, directed to all of Pioneer's sales agents, urging them to "<u>Make Canceling DTN Subscriptions a Priority</u>." Pioneer provided detailed instructions on exactly how to cancel DTN customer Subscription Agreements, including

options to do so by phone or email, and encouraged customers to remove and discard parts of the DTN equipment, proclaiming that the Weather Stations "are easy to take down." Even more damaging, the e-mail also instructs a customer to call 1-844-744-7333 (a phone number that belongs to DuPont Pioneer) to "cancel the DTN subscription".

5.  ███████████████████████████████████████████████████████████████

███████ Pioneer's interference in these leases is dangerous to the farmers, likely to cause property damage, and harmful to DTN. Furthermore, Pioneer's efforts to get DTN's customers to break their leases and return the weather stations hurts DTN's goodwill and reputation—the weather stations *are* DTN; they are DTN's brand. DTN has installed the weather stations over a period of at least four years, at great expense, and customers identify them with DTN. Without Pioneer's interference, DTN keeps customers who have a DTN weather station for an average of 5-7 years.

6.  Pioneer's campaign to tortiously interfere with and terminate all DTN customer subscription agreements, its ongoing refusal to activate the MyDTN hyperlink on its website, and its instructions to DTN customers to break down and return their weather stations—all in contravention of the Agreement's ████████████—have been successful in causing DTN massive harm. In just the last six weeks, DTN has lost over 600 customer accounts and received cancellations and returns of over 1,300 units (Weather Stations or MyDTN online users), resulting in losses exceeding one million dollars.

7.  This is all part of a long-running effort by Pioneer to steal DTN's customers and

put DTN out of business.[1]  Pioneer's unlawful conduct threatens the loss of a significant portion of DTN's revenue, along with its goodwill, reputation, and market share.  DTN is losing hundreds of customers at a critical juncture—the beginning of the growing season—and once they are gone, they will be lost for at least this growing season if not forever.  DTN's viability as a business is threatened by this cascade of lost customers.  DTN comes before this Court seeking equitable injunctive relief and damages, to put a stop to Pioneer's bad faith conduct designed to eliminate a competitor.

## PARTIES

8. Plaintiff DTN is a Delaware limited liability company with a headquarters located at 9110 W Dodge Rd, Omaha, Nebraska 68114.  DTN's members are DTN Ag, LLC, a Delaware limited liability company and DTN US Holdings, LLC, a Delaware limited liability company.  The member of DTN US Holdings, LLC is TBG Holdings DTN BV, an entity organized under the laws of the Netherlands. The member of DTN Ag, LLC is TBG Holdings DTN BV, an entity organized under the laws of the Netherlands.

9. Defendant Pioneer is an Iowa corporation with a headquarters located at 7300 NW 62nd Avenue, Johnston, Iowa 50131.

## JURISDICTION AND VENUE

10. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

---

[1] On top of the foregoing, Pioneer has recently hired a DTN employee, Walsh, who stole DTN's trade secrets and is currently restrained by a federal court injunction (*DTN, LLC v. Walsh*, No. 17-cv-5206 (D. Minn.)).  It is telling that months after learning of Walsh's theft of DTN's trade secrets, Pioneer is still fighting to hire him—undoubtedly to obtain that illicit information.  Pioneer has also interfered in a planned acquisition by DTN that was aborted as a result.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to the causes of action described herein occurred in the District of Delaware, and under 28 U.S.C. § 1391(b)(3) because Pioneer is subject to this Court's personal jurisdiction with respect to this action.

12. Furthermore, under the terms of the Collaboration and License Agreement (the "Agreement") entered into on or around January 22, 2014, the parties agreed to exclusive jurisdiction in this Court, as follows:



(A true and correct copy of the Agreement is attached hereto as **Exhibit A**; *see* Ex. A. at § 10.9.)

## BACKGROUND

**A.     The Parties' Relationship.**

13. DTN develops business management tools that enable farmers, agribusiness, and commodity traders in the agriculture industry to manage their businesses, including without limitation agricultural information solutions and market intelligence products. DTN also provides services in the areas of weather forecasts, markets, news, crops, livestock, equipment, technology, business and inputs, and farm life.

14. DTN also offers a website called "MyDTN" on a subscription basis to its customers, which includes farmers, agribusiness, and commodity traders. MyDTN is the leading independent, trusted source of actionable insights and market information designed to meet the needs of producers: field-level forecasts, proprietary industry coverage from our award-winning newsroom, and more. It aggregates and consolidates key information for more efficient and effective buying, selling, and other decision making.

Case 1:18-cv-00384-LPS   Document 24   Filed 03/19/18   Page 6 of 20 PageID #: 221

15. DTN also offers weather stations to its customers which provide detailed, field-level weather forecasts and agronomic insights for specific areas and geographic regions. DTN owns those weather stations, which are complex technological instruments, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███ A DTN weather station looks like this:

 

16. Pioneer does not offer weather stations. Pioneer holds itself out as a company specializing in products that assist farmers in maximizing crop yield and reducing the risks associated with agriculture. Pioneer sells genetically modified seeds and plants, and a nitrogen management service and website called Encirca Nitrogen Service ("Encirca").

17.     DTN and Pioneer directly compete against each other in selling agricultural services and data to farmers across the country.  This competition is particularly fierce in March of each year, when the growing season begins and seeds are planted.

18.     From 2007 to 2014, Pioneer purchased certain weather and meteorological data it used in Encirca from DTN.

19.     In 2014, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████

**B.      The Parties' Collaboration and License Agreement.**

20.     The parties entered into the Agreement on or around January 22, 2014.

21.     Under the terms of the Agreement, ███████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████

22.     The Agreement further ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

(*Id.*)

23. █████████████████████████████████████
████████████████████████████████████████
███████████████████

24. ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████

25. ███████████████████████████████████
████████████████████████████████████████
███████████████████

26. ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█

27. The term of each DTN Subscription Agreement █████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

███████████. (*Id.*)

28. DTN derives millions of dollars in fees on an annual basis from its customer Subscription Agreements, including through the leasing of Weather Stations.

**C.     Pioneer Breaches the Agreement and DTN Terminates.**

29. Pioneer failed to carry out its contractual duties in many ways, and further engaged in anticompetitive and unfair behavior, culminating in a frivolous lawsuit filed in this Court just one month ago.

30. For example, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ DTN lost millions of dollars of license fees as a result.

31. Pioneer also had a ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

32. Pioneer also failed to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, causing additional losses of millions of dollars.

33. Pioneer further breached ████████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████
██████████████████████████

34.     On October 26, 2017, DTN gave Pioneer written notice that it was terminating the Agreement for ████████████████████ the Agreement based on the foregoing breaches by Pioneer of the Agreement, including breaches ██████████████████████ ████████.

35.     DTN further terminated the Agreement ███████████████████████ ████████████████████████████████████████████████████████ ██████.

36.     Pioneer responded on November 3, 2017, purporting to terminate the Agreement itself and arguing that DTN's termination was ineffective.

37.     The parties agree that the Agreement has been terminated, although there is a dispute whether DTN terminated on October 26, 2017 or Pioneer terminated on November 3, 2017.

**D.     Post-Termination Responsibilities Under the Agreement.**

38.     While both parties agree that the Agreement is now terminated, █████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ As detailed below, Pioneer has been flagrantly violating this provision.

**E.     Pioneer Falsely Accuses DTN of Terminating Customer Subscription Agreements in Violation ████████████**

39.     Recently, Pioneer filed a lawsuit in this Court alleging a breach of ██████████ of the Agreement, and sought a temporary restraining order barring DTN "from terminating the

10

subscription agreements with the parties' customers under the January 22, 2014 Collaboration and License Agreement." (*See* Case No. 18-cv-00206-LPS, Doc. 2.)

40. After DTN proved to the Court that it had not terminated anyone's subscription agreements—and in fact, DTN was fully cooperating by, among other things, making its Collaboration Products available through the "MyDTN" link—the Court denied Pioneer's requested TRO. Pioneer subsequently dismissed its own suit.

F. **DTN's Discovery That Pioneer is Actually Terminating Its Customer Agreements.**

41. Although Pioneer abandoned its unfounded lawsuit, Pioneer is now doing exactly what it previously accused DTN of doing: terminating DTN's customer subscription agreements. Far from ████████████████████████████████████████ ████████ *Pioneer is contacting its sales agents and customers and instructing them to take aggressive steps to terminate all DTN customer subscription agreements*.

42. Incredibly, Pioneer sent out a mass email to all of its sales agents urging them to "Make Canceling DTN Subscriptions a Priority." (A true and correct copy of that email is attached hereto as **Exhibit C**.)

43. Pioneer provided detailed instructions on exactly how to cancel DTN customer Subscription Agreements, including options to do so by phone or email, and encouraged customers to remove and discard parts of the DTN equipment, proclaiming that the Weather Stations "are easy to take down."

44. Specifically, Pioneer's March 5, 2018 email to its sales agents instructed as follows:

**Make Canceling DTN Subscriptions a Priority**

1) Call 1-844-744-7333 option 2, or e-mail pioneeradmin@dtn.com to cancel the DTN subscription

2) DTN will send a box via FedEx to put the weather station in for return shipment

3) The packed box needs to be picked up by FedEx or dropped at a FedEx location

4) Take a crescent wrench with you to loosen up the nuts on the clamps...they are easy to take down

5) The tripod stand does not go back to DTN and can be discarded or used as a mount for a replacement station

6) Finally, even if they cancelled by phone, have the customer send an email message to cancel the weather station so they have a written record of the request.

7) Use the template below for cancelation e-mails sent to pioneeradmin@dtn.com

Telvent DTN,

Please cancel the DTN Subscription with Weather Station for my account.

Cancelation Date:  3/5/2018

Operation ID:

Operation Name:  Schieber Seeds

Operation Full Billing Address:  13653 County 12, Caledonia, MN. 55921

Type of Weather Station (Wireless or Cellular):   Wireless

(*See* Ex. C.)

       45.    DTN has 6,000 Weather Stations in use; 4,000 of those are for collaboration customers with Pioneer. ████████████████████████████████████████████████ ████████████████████████████. On average, DTN retains customers with Weather Stations for

12

5-7 years. But if the Weather Stations are removed, DTN no longer has a comprehensive solution and can easily lose the customer.

46. The Weather Stations are complex pieces of technological hardware, and the ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████. (Ex. B at § ███)

47. Pioneer's instruction to DTN customers on how to remove the Weather Stations without involving DTN is improper and dangerous. The Weather Stations are DTN's property, as leased to the customers, and the customer can be harmed, or the property damaged, if not properly and safely dismantled.

48. Pioneer sent other similar emails to customers encouraging them to cancel their subscriptions and withhold payment to DTN. For example, one email from Pioneer instructed DTN's customers that they did not have to pay DTN, and told them how to cancel their DTN subscriptions—and further offered to cancel those subscriptions on DTN's customers' behalf. This is a far cry from striving to make sure the customers honor their subscriptions. The email reads, in part:

> It's likely that DTN will want to renew, re-enroll, or continue the subscription by billing you directly (instead of billing Pioneer previously). **You are under no obligation to continue with any services through DTN.** If you receive an invoice or statement, please do not feel like you are obligated to pay that or commit to renew unless you do wish to keep the subscription or had your own subscription prior to Encirca and wish to continue it. If you do not wish to keep the subscription, feel free to let them know that you would like to cancel, or pass any correspondence/invoices along to me and I will handle it.

(A true and correct copy of that email is attached hereto as **Exhibit D**.)

49. Pioneer's campaign to terminate all DTN customer subscription agreements, in contravention of the Agreement's ████████████████████████████████████ has been successful in causing DTN massive harm. Since February 1, 2018, over a million dollars in annual revenue

13

cancelled, totaling over 600 customer accounts and over 1,300 units, with a unit defined as a single Weather Station or MyDTN online user.

50. Pioneer's unlawful conduct threatens the loss of a significant portion of DTN's revenue, along with its goodwill, reputation, and market share. DTN typically keeps customers for 5-7 years on average, but Pioneer's interference is causing those relationships to terminate much sooner. DTN is losing hundreds of customers at a critical juncture—the beginning of the growing season—and once they are gone, DTN will not be able to get them back, for at least the remainder of this growing season.

51. DTN's viability as a business is threatened by this cascade of lost customers. DTN combined its customer base with Pioneer's in an attempt to collaborate under the Agreement, and now Pioneer is stealing and destroying DTN's customer base.

52. Furthermore, Pioneer's efforts to get DTN's customers to break their leases and return the Weather Stations hurts DTN's reputation—the weather stations *are* DTN; they are DTN's brand. These Weather Stations were installed over at least a four year period, at great expense to DTN, and customers identify them with DTN. Pioneer's efforts to get DTN customers to terminate their contracts early, before the growing season commences, and to dismantle and return the Weather Stations, damages DTN's goodwill in the marketplace.

53. On March 6, 2018, DTN wrote to Pioneer demanding that it immediately cease and desist from all such unlawful efforts to terminate DTN's subscription agreement customers, and its wide-scale effort to have those customers cancel their contracts with DTN. Pioneer responded on March 8, 2018 by denying all wrongdoing, stating: "Your letter claims that Pioneer is acting in ████████████████████████ the Agreement and 'instructing' its customers to cancel their

subscription agreements with DTN. <u>Pioneer is doing no such thing</u> . . . ." (A true and correct copy of that letter is attached hereto as **Exhibit E**.)

54. After receiving this inaccurate denial from Pioneer's counsel, DTN provided Pioneer with a copy of its own March 5, 2018 email above—which Pioneer must not have been aware that DTN possessed—conclusively establishing that Pioneer was, in fact, instructing its customers to cancel their subscription agreements with DTN.

55. Unless this Court acts quickly to stop Pioneer's unlawful tactics, DTN will lose hundreds more customers and suffer irreparable harm.

### G. DTN's Urgent Need for Relief.

56. ███████████████████████████████████████████████████████████████████████ any reason in recognition of the hard work and money DTN had spent in developing those relationships, placing and maintaining DTN's Weather Stations, and providing important customer services.

57. DTN requests emergency injunctive relief, to enjoin Pioneer from causing imminent and additional irreparable harm to its business and reputation.

58. Among other things, Pioneer should not be permitted to interfere with DTN's rights under the Agreement and Subscription Agreements by encouraging cancellation instead of cooperating to ensure that the customers retained access to the Collaboration Products.

59. If Pioneer is permitted to sabotage DTN at this critical time, just before growing season, it will cripple DTN's plans to continue providing its Weather Data to agricultural customers.

60. A greater injury would result to DTN from refusing an injunction than Pioneer would suffer by granting it. In particular, Pioneer would not be harmed at all if an injunction is

granted because Pioneer would be required only to live up to the terms of the Agreement, which it previously sought to enforce in this Court.

61. The public has an interest in the issuance of an injunction—which will protect a substantial amount of agricultural customers across the country by ensuring that there is no disruption to their critical DTN services.

62. The potential harm to DTN—the destruction of its business and goodwill—far exceeds any harm to Pioneer, who is being asked only to honor the parties' Agreement and the Subscription Agreements.

63. DTN is likely to prevail on the underlying merits of the case, as Pioneer's actions are illegal and improper pursuant to the express terms of the Agreement.

64. The issuance of an injunction enjoining Pioneer from infringing on DTN's rights—while still permitting Pioneer the agreed-upon access to and cooperation for the Subscription Agreement customers—is reasonably suited to abate the threat to DTN's business operations.

## COUNT I – BREACH OF CONTRACT

65. DTN incorporates by reference the foregoing paragraphs of this Complaint as though the same were set forth at length herein.

66. The Agreement was a valid contract entered into by DTN and Pioneer.

67. DTN has fully performed all of its obligations under the Agreement.

68. Pioneer has breached its contractual obligations to DTN, as detailed above, by (among other things):

> (i) taking aggressive steps to induce DTN's Subscription Agreement customers to terminate their subscription agreements with DTN immediately, [REDACTED]
>
> [REDACTED]

16



69. Despite DTN's repeated requests that Pioneer honor the provisions of the Agreement, Pioneer has refused.

70. As a direct and proximate result of Pioneer's breaches of the Agreement, DTN has sustained, and will continue to sustain, actual damages.

71. Furthermore, as a direct and proximate of Pioneer's ▮▮▮▮ ▮▮▮▮ and its efforts to induce customers to immediately cancel those agreements, DTN has suffered, and will continue to suffer, irreparable harm.

WHEREFORE, DTN demands judgment in its favor and against Pioneer:

    a.    For a Temporary Restraining Order and a preliminary and permanent injunction in the form of an Order enjoining Pioneer from continuing all unlawful communications with DTN's Subscription Agreement customers, and its wide-scale effort to have those customers cancel their contracts with DTN;

    b.    For actual damages that DTN is entitled to recover as a result of Pioneer's breaches;

    c.    For incidental and consequential damages as permitted by law;

    d.    For interest;

    e.    For DTN's attorneys' fees and costs; and

  f. For all such other relief as this Court deems appropriate.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT

72. DTN incorporates by reference the foregoing paragraphs of this Complaint as though the same were set forth at length herein.

73. Pioneer has tortiously interfered with DTN's Subscription Agreements.

74. DTN had an existing contractual relationship with Subscription Agreement customers, and Pioneer knew or should have known about those contractual relationships.

75. Pioneer acted intentionally and tortiously interfered with DTN's contractual relationships by the conduct detailed further above, including by improperly encouraging sales agents and customers to cancel their subscription agreements with DTN, providing detailed instructions on exactly how to cancel the Subscription Agreements, and encouraging the Subscription Agreement customers to remove and discard parts of the DTN equipment.

76. Throughout all of its tortious conduct, Pioneer has acted without privilege or justification in interfering with DTN's Subscription Agreements.

77. Pioneer's interference with the Subscription Agreements was willful and wanton and has been carried out with a specific intent to injure DTN in the conduct of its business.

78. DTN has suffered, and will continue to suffer, actual, substantial and irreparable damages as a result of Pioneer's tortious conduct.

WHEREFORE, DTN demands judgment in its favor and against Pioneer:

  a. For a Temporary Restraining Order and a preliminary and permanent injunction in the form of an Order enjoining Pioneer from continuing all unlawful communications with DTN's subscription agreement customers,

  and its wide-scale effort to have those customers cancel their contracts with DTN;

b.  For actual damages that DTN is entitled to recover as a result of Pioneer's tortious interference;

c.  For incidental and consequential damages as permitted by law;

d.  For interest;

e.  For DTN's attorneys' fees and costs; and

f.  For all such other relief as this Court deems appropriate.

Dated: March 12, 2018         Respectfully submitted,

                 **BLANK ROME LLP**

                 */s/ David A. Dorey*
                 David A. Dorey (No. 5283)
                 Craig Haring (No. 6231)
                 1201 N. Market Street, Suite 800
                 Wilmington, Delaware 19801
                 Telephone: (302) 425-6400
                 Facsimile: (302) 425-6464
                 Dorey@blankrome.com
                 CHaring@blankrome.com

                 Daniel E. Rhynhart (*pro hac* to be filed)
                 Brian S. Paszamant (*pro hac* to be filed)
                 Daniel S. Morris (*pro hac* to be filed)
                 One Logan Square
                 Philadelphia, Pennsylvania 19103
                 Telephone: (215) 569-5500
                 Facsimile: (215) 832-5371
                 Rhynhart@blankrome.com
                 Paszamant@blankrome.com
                 Morris-d@blankrome.com

                 *Attorneys for Plaintiff, DTN, LLC*
                 *F/K/A Telvent DTN, LLC*

## VERIFICATION

I, Jason Krueger, Vice President - Mergers & Acquisitions, Legal for Plaintiff DTN, LLC f/k/a Telvent DTN, LLC, do hereby verify and affirm that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief. I am authorized to make and am making this Verification on behalf of the Plaintiff.

This Verification is made subject to the penalties of 28 U.S.C. § 1746 for unsworn falsification to authorities.

JASON KRUEGER

Dated: March 12, 2018