**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DTN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PIONEER HI-BRED INTERNATIONAL, INC.,<br><br>Defendant. | Civil Action No. 18-384-LPS |

**MEMORANDUM ORDER**

Pending before the Court is Pioneer's Motion to Strike Plaintiff's Demand for Trial by Jury. Having reviewed the parties' letters and exhibits (D.I. 143, 144, 156, 161), **IT IS HEREBY ORDERED** that Pioneer's motion (D.I. 147) is **GRANTED**.

1. On January 22, 2014, Defendant Pioneer Hi-Bred International, Inc. ("Pioneer") and Plaintiff DTN, LLC ("DTN") executed a Collaboration and License Agreement ("Agreement") "to jointly offer DTN premium weather and market content and weather stations to both parties' customers through their respective sales channels." (D.I. 72 at 1; *see also* D.I. 144-1 at 1) Pursuant to the Agreement, the parties agreed that in order to commercialize their Collaboration Products, DTN would lease its Weather Stations to the parties' customers pursuant to Subscription Agreements that DTN would enter into with the customers. (*See* D.I. 72 at 7-8) The Agreement provided a "Transition" provision, stating that after termination of the Agreement the parties must "cooperate and exchange information to ensure that all customer subscription agreements for Collaboration Products are honored for the duration of the term of such agreements." (*Id.* at 10-11; *see also* D.I. 144-1 at 15) The Agreement also included a

"Waiver of Jury Trial" provision that stated, in all caps, "NO PARTY TO THIS AGREEMENT. . . SHALL SEEK A JURY TRIAL IN ANY LAWSUIT . . . BASED UPON OR ARISING OUT OF THIS AGREEMENT." (D.I. 144-1 at 25)

2. In its Amended Complaint (D.I. 72), DTN brings seven causes of action against Pioneer, including breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, unfair competition, and unjust enrichment. DTN does not dispute that its breach of contract and breach of covenant claims arise out of the Agreement.[1] The only dispute is whether DTN's tortious interference, unfair competition, and unjust enrichment claims are subject to the jury waiver. Pioneer argues that they are because "[a]ll of the factual allegations DTN relies on to support [those claims] are largely identical to or even coextensive with the conduct alleged to constitute a breach of contract." (D.I. 143 at 2) DTN argues that they are not because these are tort claims that "arise independent from" the Agreement. (D.I. 156 at 2-3)

3. "As a general matter, courts construe jury trial waivers narrowly and indulge every reasonable presumption against waiver. However, jury trial waivers are routinely enforced, and broadly worded waivers are interpreted broadly, according to their plain meaning." *Coface Collections N. Am., Inc. v. Newton*, 2012 WL 3782432, at *1 n.2 (D. Del. Aug. 31, 2012); *see also Collins v. Gov't of Virgin Islands*, 366 F.2d 279, 284 (3d Cir. 1966).

4. The heart of the factual allegations in DTN's Amended Complaint is Pioneer's alleged misconduct in winding down the parties' Agreement by interfering with DTN's

---

[1] Nor does DTN dispute that its waiver was knowing and voluntary, that both parties are sophisticated business entities, that the parties had an opportunity to negotiate the contract terms, and that the provision was conspicuous in the contract.

subscription agreements with the parties' joint customer base. With respect to the breach of contract and covenants claims, this is alleged to be a breach of the "Transition" provision. For the remainder of the claims, Pioneer's alleged misconduct is based in tort. However, the factual allegations pertaining to all claims in the Amended Complaint focus on the same alleged improper interactions between Pioneer and the joint customer base, including encouraging customers to cancel their subscription agreements and return their weather stations and misinforming customers regarding the parties' products. Since the Agreement was intended to govern the parties' relationship with their joint customer base and all of the claims are based on Pioneer's improper interactions with those customers, all of the claims are "based upon" or "aris[e] out of" the Agreement. Therefore, all of the claims are subject to the jury waiver.

5. The Court's conclusion is supported by case law. In *Henricks Commerce Park, LLC v. Main Steel Polishing Co., Inc.*, 2009 WL 2524348, at *3-4 (W.D. Pa. Aug. 18, 2009), the plaintiff conceded that a lease's jury waiver applied to its breach of contract claims but disputed its application to its tort claims (intentional interference with prospective business relations, private qualified nuisance, trespass, and negligence per se). By its language, the jury waiver provision was very broad, applying to "any action . . . in any way connected with this Lease, the relationship of Landlord and Tenant, and Tenant's use or occupancy of the Premises, and/or claim of injury or damage." *Id.* The Court determined the intentional interference with prospective business relations claim was subject to the waiver because the factual allegations would constitute a violation of the lease agreement. *See id.* at 4. The Court further determined that the other claims were lease violations pleaded as torts. *Id.*; *see also Coface* , 2012 WL 3782432, at *1-4 (finding misappropriation of trade secrets, unfair competition, and conversion

claims covered by jury waiver relating to "any litigation directly or ***indirectly*** arising out of or relating to this Agreement") (emphasis added); *In re Castle Cheese, Inc.*, 541 B.R. 586, 598-99 (W.D. Pa. 2015) (finding "any action" language in jury waivers "is sufficient to draw into the ambit of the jury waiver those [tort] claims or causes that arise out of (or are related to) alleged injuries caused by improper contract enforcement by a defendant"). The cases cited by DTN are unpersuasive.

6. Finally, DTN's contention that the Court already decided the issue presented in Pioneer's motion is incorrect. It is true that in the scheduling order entered on April 18, 2018, the Court handwrote "jury" in the paragraph in which it also wrote in the trial date. (D.I. 68 at 10) This was a ministerial addition, required to alert the Court's Jury Administrator (and other authorities) to prepare for the possibility of a jury trial.[2] At all times, Pioneer expressly reserved its right to challenge DTN's jury demand. (*See* D.I. 68 at 9 nn. 7-8) (Pioneer stating its position that "the parties' waived any right to a jury trial in this matter" and DTN noting "if Pioneer disagrees with the jury demand, Pioneer is free to challenge the demand once it is filed") The Court has not, until today, ruled on the merits of that objection.

Accordingly, DTN's jury trial demand is STRICKEN. The trial in this case will be a bench trial.

November 14, 2018
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT

---

[2] As a practical matter, it is far easier for the Court to convert a scheduled jury trial into a bench trial than it is to summons a jury for a trial that had long been scheduled to be to the bench.